### HOLMES et al. v. YATES et al.
### No. 2530.

Court of Civil Appeals of Texas. El Paso.
April 16, 1931.

Rehearing Denied May 14, 1931.

Jones & Lyles, of Del Rio, and R. J. Randolph, of Austin, for appellants.

J. W. Hill and Smith & Neill, all of San Angelo, Burney Braly, of Ft. Worth, and R. J. Fellingham, of Chicago, Ill., for appellees.

### PELPHREY, C. J.

On February 16, 1887, O. W. Williams, deputy county surveyor of Pecos county, made out original field notes of sections 101 and 102, block 194, Texas Central Railway Company surveys; the latter section being the public school alternate of section 101; each of the

four lines of said surveys having a length of 1,900 varas. Such field notes were filed in the general land office March 3d of the same year, and called for an acreage of 640 acres in each section. The commissioner of the general land office claimed that such field notes were in conflict with Block 194, Gulf, Colorado & Santa Fé Railway Company, an older and superior location. Upon instructions from the land commissioner, Williams made out corrected field notes for the two sections calling for the east and west lines to have a length of 1,209 varas instead of the original 1,900 varas. The original field notes were marked in the land office, "cancelled by corrected notes."

On April 14, 1894, a patent was issued to M. C. Miller, assignee, to section 101 as containing 407 acres. Section 102 was classified on December 2, 1887, as dry grazing land, 640 acres, and appraised at $2 per acre. In the revised list of unsold school land in Pecos county, made September 27, 1901, section 102 was classified as dry grazing land, 407 acres, and appraised at $1 per acre. It was again classified as dry grazing land, 407 acres, on November 30, 1901, and on November 20, 1903. On November 20, 1908, it was classified as grazing and mineral, 407 acres, and appraised at $2 per acre, and on May 21, 1912, it was classified as mineral and grazing, 407 acres, and appraised at $1.50 per acre. On July 24, 1914, Rube Holmes made application to purchase section 102 as 407 acres, appraised at $1.50 per acre as additional land to his home tract; the application containing an express reservation of the mineral estate if the land were classed as mineral. This application was filed in the land office July 29, 1914, and the land was awarded to him August 26, 1914. Holmes proved his three years' occupancy of the land and obtained a certificate thereon, and on October 22, 1917, sold the section, described as containing 407 acres, to J. H. Tibbett.

In 1918, shortly after the sale to Tibbett, Rube Holmes died intestate. On October 9, 1920, I. G. Yates filed a letter of inquiry as to a vacancy which included the land in controversy. A survey was made of the alleged vacancy by R. S. Dod, a licensed state land surveyor, and on November 8, 1920, a set of field notes of a survey, designated as survey 34½, made by Dod, were filed in the land office. Thereafter Yates made application to purchase said survey, and on April 13, 1927, a patent therefor was issued to him. Yates subsequent to his application to purchase executed certain oil and gas leases, and the production of oil and gas began on said land in September, 1927. On December 27, 1928, Mrs. Ruby Holmes, individually and as survivor of the community estate of herself and her deceased husband, Rube Holmes, filed an application for an adjustment of the account on

section 102 in the land office, which was refused by the land commissioner.

On March 19, 1928, corrected field notes made by J. A. Simpson, licensed land surveyor, of section 102, were filed in the land office. The notes included the original 407 acres and the 212.3 acres in dispute. These notes were disapproved by the commissioner. Mrs. Holmes, on February 16, 1929, filed in the land office her affidavit to the effect that she was the owner of the 212.3 acres in controversy, that same had never been transferred or sold, and tendered the sum of $500 to pay interest or principal and interest thereon. This affidavit was accompanied by a photostatic copy of the Simpson field notes. The tender was rejected, and on August 14, 1929, Mrs. Holmes and George S. Anderson, to whom she had executed an oil and gas lease, brought this suit in trespass to try title and for damages for the oil produced and taken from the property against Yates and the McMan Oil & Gas Company and the Continental Oil Company.

Appellees answered by plea of not guilty, pleaded the three, five, two, and one year statutes of limitations, estoppel, and alleged that they were bona fide purchasers for value, without notice, and as such were entitled to be protected against appellants' right of recovery.

The case was tried before the court, and resulted in a judgment that appellants take nothing, from which they have appealed.

### Opinion.

Appellants' brief contains eight assignments of error and sixteen propositions thereunder.

Without attempting to take up and discuss them in order, we think their case depends upon the soundness of their contention that when Rube Holmes, in 1914, applied to buy section 102, listed as containing 407 acres, he acquired an absolute title to all the land embraced in the original field notes of this section filed in 1887, which did not conflict on the ground with prior surveys. As the basis for this contention, they claim that the corrected field notes were unauthorized and therefore cannot be given effect as a substitute for the originals.

It is not denied that there was not, as indicated by the map of Pecos county in the land office, sufficient vacant land between Runnels county school land league No. 3 and block 194, Gulf, Colorado & Santa Fé Railway Company, to permit the location of four surveys having a width north and south of 1,900 varas, and it is admitted that on the ground there was not sufficient land to accommodate four such sections.

Article 3918 of Revised Statutes 1879 provides: "If, upon examination of the field-

notes of a survey in the general land-office, they are found to be incorrect, it shall be the duty of the commissioners to cause a plain statement of the errors, with a sketch of the map, to be forwarded by mail or by the party interested, to the surveyor who made the survey, with a requisition to correct the same and return corrected field-notes to the general land-office."

It goes without saying, we think, that the commissioner was not expected to accept field notes which showed, according to the records of his office, a conflict between the land called for by them and a prior survey.

Therefore the action taken by the commissioner in calling for corrected field notes was called for by the statute, and, upon receipt of such corrected field notes, covering land which the records there disclosed called for all the vacant land available, his acceptance of such field notes, in our opinion, fixed the boundaries of such survey, and a person contracting to purchase from the state thereafter was bound by such field notes.

We fail to be able to distinguish between the facts here and those in the case of Miller v. Yates, 15 S.W.(2d.) 730, and we see no reason why the doctrine there laid down by this court should not apply here.

Long years after the filing of the corrected field notes in the land office, Rube Holmes applied to purchase section 102. At the time of his application, the field notes on file in the land office showed that section to contain only 407 acres. He paid the cash payment called for by such field notes and obligated himself to pay a total consideration based on 407 acres as appraised by the commissioner. Neither he nor the commissioner were aware of the existence of the land in dispute, and we fail to see how his widow can now successfully claim that by thus contracting the title to all lands not in actual conflict vested in him.

We have considered the other assignments presented by appellants, and, while we deem it unnecessary to discuss them, we have concluded that they should be overruled.

While there are other grounds upon which we might base a judgment of affirmance, we think the one above discussed is sufficient to show that appellants failed to show such title in themselves as would support an action of trespass to try title, and the judgment must accordingly be affirmed.

### On Motion for Rehearing.

We have carefully examined the motion of appellants for rehearing and find nothing presented therein which would cause us to recede from our previous holding.

The motion is therefore overruled without further comment.

Appellees have also filed a motion requesting us to make additional findings of fact and conclusions of law and to pass upon their several counter propositions. They call our attention to the fact that in the case of Miller v. Yates (Tex Civ. App.) 15 S.W.(2d) 730, we inadvertently stated that at the time of the filing of the original field notes of surveys 101, 102, 103, and 104, by O. W. Williams, deputy surveyor, in 1887, there was actually on the ground enough unappropriated public domain between the south line of Runnels county school land league No. 3 and the north line of block 194, Gulf, Colorado & Santa Fé Railway Company to accommodate the location of four full surveys having a width of 1,900 varas north and south, while in the instant case we say: "It is not denied that there was not as indicated by the map of Pecos County in the Land Office sufficient vacant land between Runnels County School Land League No. 3, and Block 194, G. C. & S. F. Ry. Co., to permit the location of four surveys having a width north and south of 1900 varas and it is admitted that on the ground there was not sufficient land to accommodate four such sections."

It probably was not admitted in Miller v. Yates, supra, as here, that there was an actual conflict on the ground, and appellees may be correct in their belief that such statement caused the granting of the writ in that case.

Such is not true here, however, and certainly the Supreme Court will not grant a writ based upon the fact that no conflict existed on the ground.

While in this particular the facts in the present case and Miller v. Yates are apparently different, yet, as said in our original opinion, we can see no reason why the doctrines laid down in that case should not apply here. We feel so confident of the correctness of our original holding in this case that we deem it unnecessary to incumber the record with a discussion of appellees' counter propositions, and their motion will accordingly also be overruled.